IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Christopher Stone, | C/A No. 1:21-1405-JFA-PJG |
| Plaintiff, | |
| vs. | **ORDER** |
| Stephen T. Glass, Michael Williams, Brandon Morgan, Michael Hawthorne, and Deputy Poindexter, | |
| Defendants. | |

I.     **INTRODUCTION**

Plaintiff, Christopher Stone ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 against five Aiken County sheriff's deputies. Specifically, Plaintiff alleges his Fourth Amendment right was violated by Defendants when they used excessive force against him to effect an arrest. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings.

After reviewing Defendants' joint motion for summary judgment and all responsive briefing, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"), which opines that summary judgment should be granted in part and denied in part. (ECF No. 40). The Report recommends summary judgment should be granted as to Defendants Deputy Poindexter ("Poindexter") and Michael Hawthorne ("Hawthorne") but denied as to Defendants Stephen T. Glass ("Glass") and Brandon Morgan ("Morgan"). Because Defendant Michael Williams was never served and has not

1

made an appearance in this case, the Report recommends he be dismissed for lack of service pursuant to Federal Rule of Civil Procedure 4(m).

Defendants Glass and Morgan filed objections to the Report on November 21, 2022 (ECF No. 46), and Plaintiff filed a reply on December 5, 2022. (ECF No. 47). Thus, this matter is ripe for review.

II.     STANDARD FOR REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report

2

thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

The legal standard employed in a motion for summary judgment is well-settled and correctly stated within the Report. Accordingly, that standard is incorporated herein without a recitation.

## III.   DISCUSSION

As an initial matter, the underlying facts of this case are thoroughly articulated in the Report which is incorporated herein. For context, this Court will summarize the significant facts relevant to its analysis.[1]

---

[1] This Court will include citations where it is especially relevant.

On May 12, 2018, Defendants were called out twice to an Aiken County home to check on the welfare of Plaintiff's ninety-one-year-old grandfather, Leroy Bates ("Bates"). Defendants Glass and Poindexter responded to the first call out to the home. When they arrived, they found Plaintiff feeding Bates while he sat in the passenger seat of Plaintiff's truck. Bates suffered from Alzheimer's disease and was unable to move around without assistance, so Plaintiff placed him in the passenger seat of his truck while he cleaned out his home in preparation for remodeling work. As noted in the Report, it is unclear what else occurred during this visit, however, there is no evidence in the record to suggest there was any confrontation between Plaintiff and the deputies at this time.

Later in the day, the deputies were called to Plaintiff's home again to check on Bates because he was reportedly "unresponsive." Defendant Glass returned to the house with Defendants Hawthorne, Williams, and Morgan. Importantly, much of the incident was captured on video by each Defendants' body camera.[2] When they arrived, Plaintiff was in the yard holding three of his dogs on leashes. There were other dogs in the yard, but they were unleashed. The four deputies approached Plaintiff's truck to check on Bates when Glass found Bates to be lethargic, slowly lifting his head when Glass spoke to him.

Plaintiff walked toward them with the leashed dogs and told the officers "I'm getting tired of my brother's antics, I know he's the one who called y'all so there's no need for all this." (Morgan Video at 00:00 to 00:09.) Deputy Williams opened the driver's side door of Plaintiff's truck and one of the deputies asked Bates if he was okay. Williams told Plaintiff

---

[2] Because the body camera videos submitted to the Court were not labeled, this Court will follow the Report and cite to the videos herein based on the deputies' cameras to which the videos appear to correspond.

4

to "get the hell out of here" and "go on somewhere else" and Plaintiff told the deputies, "Y'all need to get out of my truck." (Williams Video at 00:24 to 00:29; Morgan Video at 00:10 to 00:12.) Plaintiff yelled for his mother to come out of the house. One of the deputies told Plaintiff to "relax" as Glass continued to check on Bates. (Morgan Video at 00:18 to 00:19). In response, Plaintiff yelled "No I'm not going to relax, you touch him I will have your badge!" (Morgan Video at 00:20 to 00:24). At this point, Plaintiff was walking in front of the truck still holding three dogs on leashes with both of his hands and his arms are raised outward to each side. The following events happened very quick.

Glass closes the passenger door of the truck and Glass and Morgan begin approaching Plaintiff. (Morgan Video at 00:25). One of the deputies (it is unclear which one) tells Plaintiff to let go of the dogs and at about the same time, Glass grabs Plaintiff's shirt and left arm. (Morgan Video at 00:26 to 00:27). As Glass is grabbing Plaintiff's shirt, Plaintiff responds that he can't let go of the dogs. (Morgan Video at 00:27 to 00:28). Glass and Morgan pull Plaintiff to the ground, face down. (Morgan Video at 00:29 to 00:35). As Glass and Morgan are crouched over Plaintiff to handcuff him, one of the dogs attacked Morgan. At this point, Glass claims he saw Plaintiff reach for Morgan's gun belt. Plaintiff denies he attempted to reach for Morgan's gun belt and the body camera footage does not capture such an attempt. Glass handcuffed Plaintiff's left wrist. Morgan disengages from Plaintiff to move away from the dogs and Plaintiff is able to sit up. Williams takes Morgan's place to assist Glass in holding Plaintiff while Plaintiff continues to hold onto the dog's leashes. (Morgan Video at 00:54 to 1:00). Plaintiff's mother approaches several times and is standing among the commotion.

5

Williams attempts to help Plaintiff stand up and Glass and Williams attempt to finish handcuffing Plaintiff. (Poindexter or Hawthorne Video at 1:33 to 1:44). Plaintiff resisted being handcuffed by Glass and Williams, so they forced him against the hood of the truck. (Poindexter or Hawthorne Video at 1:44). Williams forced Plaintiff's right arm behind his back to handcuff his right wrist and Plaintiff yelled that they broke his arm. (Poindexter or Hawthorne Video at 1:50 to 2:35). Glass and Williams finish handcuffing Plaintiff as Plaintiff continues to yell that his arm is broken. Glass and Williams forced Plaintiff back onto the ground to control him and Plaintiff yelled to his mother that his arm was broken. (Hawthorne or Poindexter Video at 2:46). Glass remained on his knees with Plaintiff laying face down between Glass' legs for several minutes. At one point, Glass lifted his right knee and placed it on Plaintiff's lower back or buttocks. (Hawthorne or Poindexter Video at 2:03 to 4:30). After approximately fifty minutes of Plaintiff laying and then sitting on the ground, the deputies took Plaintiff into custody.

Plaintiff was charged with breach of peace, a violation of a county ordinance[3], and three counts of third-degree assault and battery. Now, Plaintiff brings this action pursuant to §1983 claiming the deputies used excessive force when they arrested him.

A claim that a law enforcement officer has used excessive force during an arrest, investigatory stop, or other seizure of a person is properly analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution. *Graham v. Connor,* 490 U.S. 386, 394-95 (1989). The Fourth Amendment test is an

---

[3] The record does not indicate the ordinance Plaintiff was charged with violating.

objective one; however, it is not capable of precise definition or mechanical application. *Id.* at 396-97. It requires the court to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *see also Yates v. Terry,* 817 F.3d 877, 884-85 (4th Cir. 2016); *Yarborough v. Montgomery,* 554 F. Supp. 2d 611, 617 (D.S.C. 2008).

Courts must examine the totality of the circumstances in determining whether the force used was objectively reasonable. *Yates,* 817 F.3d at 885. Therefore, application of this standard "requires careful attention to the facts and circumstances of each particular case." *Graham,* 490 U.S. at 396; *see also Jones v. Buchanan,* 325 F.3d 520, 527 (4th Cir. 2003). In *Graham*, the Supreme Court established several factors to consider, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Yates,* 817 F.3d at 885 (quoting *Graham,* 490 U.S. at 396). Courts must view the evidence "'in full context, with an eye toward the proportionality of the force' in light of all the circumstances." *Yates,* 817 F.3d at 883 (quoting *Rowland v. Perry,* 41 F.3d 167, 173 (4th Cir. 1994)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396.

Defendants Glass and Morgan have lodged six separate objections to the Report's recommendation which this Court will address in turn below.

1.   **Defendants Object to the Report's Conclusion that the First and Second *Graham* Factors Weigh in Favor of Plaintiff**

The Report finds that the first two *Graham* factors—severity of the crime and Plaintiff's threat to the safety of deputies and others—weigh heavily in favor of Plaintiff. Defendants Glass and Morgan argue the Magistrate Judge incorrectly applied the law in this regard. Specifically, Defendants contend the Report overlooks that they were not required to wait for Plaintiff to physically attack before taking necessary action to protect themselves and EMS personnel.

Defendants' argument is generally correct that officers may take steps that are reasonably necessary to protect themselves or others while investigating such as temporarily detaining a suspect. *See U.S. v. Taylor,* 857 F.2d 210, 213 (4th Cir. 1988) (finding investigating officers may take such steps as are reasonably necessary to maintain status quo and protect their safety). However, Defendants argument ultimately fails because this Court finds there is a genuine issue of material fact as to whether Plaintiff was a threat to them or EMS personnel. Defendants may well have felt Plaintiff was a threat during their initial encounter with him, but their subjective motivation does not figure into the Fourth Amendment analysis. *See Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir. 1996) ("The intent or motivation of the officer is irrelevant; the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force."). To pass constitutional muster, Defendants' actions must be objectively reasonable. The law distinguishes between deputies that are *concerned* a suspect may pose a threat and deputies that *reasonably believe* a suspect poses a threat.

8

At the time Defendants' seized Plaintiff, he was unarmed holding three dogs on leashes. Plaintiff never verbally threatened Defendants or attempted to physically impede their ability to render aid to his grandfather. Although Plaintiff's behavior may have been less than ideal while Defendants were attempting to render aid to his grandfather, bad behavior, along without more, cannot be grounds for Defendants' level of force. Based on these facts, a reasonable jury could conclude that Defendants' use of force was excessive.

Therefore, this Court finds the Report's conclusion that the first and second *Graham* factors weigh in Plaintiff's favor to be correct. Defendants' first objection is overruled.

### 2. The Report Improperly Concludes that a Reasonable Jury Could Find Plaintiff Was Not a Threat to Anyone's Safety

Defendants argue the facts of this case demonstrate that they had an objectively reasonable belief that Plaintiff posed an immediate threat to their ability and EMS personnel's ability to perform the welfare check on Bates. As support for their position, Defendants point to the body camera footage which shows Plaintiff holding dogs on leashes and disregarding orders from deputies to stay back. Defendants argue they were within their constitutional authority to handcuff Plaintiff to protect themselves and EMS personnel while they checked on Bates.

As the Report found, Defendants' body camera footage calls Defendants' arguments into question. Although Plaintiff loudly challenged Defendants telling them not to touch his grandfather, Plaintiff never threatened Defendants with physical violence. As stated in the previous section, he also never tried to physically impede their ability to help his grandfather by getting between them and the truck or making physical contact with them

9

in any way. As for the threat presented by Plaintiff holding three dogs, the body camera footage does not show the dogs growling or barking at Defendants prior to their attempt to arrest Plaintiff. Once again, this Court recognizes that Plaintiff appeared angry, and Plaintiff even admits he lost his temper. However, this Court finds a genuine issue of material fact exists as to whether Plaintiff's temper justifies deputies throwing him onto the ground and breaking his arm.

Therefore, Defendants' second objection is overruled.

### 3.     The Report Improperly Finds Plaintiff was Unreasonably Handcuffed

Defendant Glass argues he acted reasonably in handcuffing Plaintiff to secure the scene and protect the other deputies and EMS personnel. Further, Defendants also argue that they should not be held liable for Plaintiff's broken right arm because the undisputed evidence shows Plaintiff resisted arrest and Plaintiff's right arm was placed in handcuffs by Defendant Williams.

Defendant Glass' objection raises another genuine issue of material fact. This Court agrees with the Report's finding that Plaintiff was resisting arrest when his arm was broken. However, initially, Plaintiff cannot be said to have resisted because Defendants grabbed Plaintiff and took him to the ground without any explanation. Further, Plaintiff can also not be said to have resisted after his arm was broken because he was secured in handcuffs and face down on the ground, but Defendant Glass continued to use force by placing his knee on Plaintiff's lower back/buttocks. The moment Plaintiff's arm was broken occurred in the middle of the incident and presents a genuine issue of material fact as to whether Defendant Glass acted reasonably in this particular moment. See Meyers v. Baltimore Cty.,

713 F.3d 723 (4th Cir. 2013) ("[F]orce justified at the beginning of an encounter is not justified even seconds later if the justification for the initial force has been eliminated."). A jury could analyze the incident in three parts finding they used excessive force during the initial encounter and at the end when Plaintiff was secured but not while Plaintiff was resisting arrest. On the other hand, a reasonable jury could also conclude Defendant Williams is responsible for the injury to Plaintiff's arm, and accordingly, there are no question of liability as to Defendants Glass for this injury.

Therefore, Defendants' third objection is overruled.

### 4.     The Report Erred in Finding Defendant Glass May Have Used Excessive Force When He Put His Knee on Plaintiff's Back

Defendant Glass objects that the Report erred in finding he used excessive force by putting his knee on Plaintiff's back because there is no evidence in the record that he did so. At most, Defendant Glass argues he placed his right knee on Plaintiff's buttocks for a brief period. Plaintiff disputes Defendant Glass' characterization of his knee placement and argues Defendant Glass did place his knee on his lower back which resulted in his lower back injury.

Like the previous objection, this Court finds Defendant Glass' objection raises a genuine issue of material fact. This Court has reviewed each deputies' body camera footage and finds a reasonable jury could accept as true either or a combination of conclusions. (Hawthorne or Poindexter Video at 2:03 to 4:30). A reasonable jury could conclude that Defendant Glass put his knee on Plaintiff's buttocks, lower back, or both.

11

Therefore, this Court finds this is an issue for the jury and Defendant Glass' fourth objection is overruled.

### 5.     The Report Erred in Finding that Plaintiff Sustained a Back Injury

Defendants object that the Magistrate Judge erred in finding Plaintiff sustained a back injury and that his injuries were "debilitating and lasting." (ECF No. 40 at 14). Defendants assert Plaintiff has presented no competent or admissible evidence of any physical injury to his spine because he has not identified a medical expert to testify about his injuries or the cause of them.

The general rule in South Carolina is that where a subject is beyond the common knowledge of the jury, expert testimony is required. Conversely, where a lay person can comprehend and determine an issue without the assistance of an expert, expert testimony is not required. *See O'Leary–Payne v. R.R. Hilton Head, II, Inc.,* 371 S.C. 340, 349, 638 S.E.2d 96, 101 (Ct. App. 2006) ("[E]xpert testimony is not necessary to prove negligence or causation so long as lay persons possess the knowledge and skill to determine the matter at issue."). This is not a case in which Plaintiff's alleged injuries have multiple possible etiologies or the origin of the injuries is unclear. *See In re Lipitor Litig.*, 227 F. Supp. 3d. 452, 470-72 (D.S.C. 2017) (citing *Richardson v. Union Pac. R. Co.*, 386 S.W.3d 77, 80 (Ark. App. Ct. 2011)("[W]hen there is no obvious origin to an injury and it has multiple potential etiologies, expert testimony is necessary to establish causation.")); *see also Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1231 (D.C. 1988) (requiring expert testimony to establish to causation "in cases presenting medically complicated questions due to multiple and/or preexisting causes."). The record contains video footage of

Plaintiff's arm being broken and Defendant Glass applying pressure with his knee to Plaintiff's lower back/buttocks. While expert testimony may be required to establish the long-term effects of Plaintiff's injuries or possibly the extent of his back injury, these issues are for trial and are insufficient to allow this Court to grant summary judgment in Defendants' favor.

Therefore, Defendants' fifth objection is overruled.

### 6. The Report Erred in Finding Defendants Were Not Entitled to Qualified Immunity

Defendants object to the Report's conclusion that they are not entitled to qualified immunity. Because the Report found that a reasonable jury could conclude that Defendants used excessive force when arresting Plaintiff, the Report proceeded to the next step in the qualified immunity analysis which is the determination of whether Defendants violated clearly established right. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) ("First, a court must decide whether the facts that a plaintiff has alleged…or shown…make out a violation of a constitutional right. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant[s'] alleged misconduct."). In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301 (4th Cir. 2004). Accordingly, the Report framed the right as this: whether case law clearly established at the time [of the incident] that it is unreasonable for law enforcement officers to tackle a

person and forcibly handcuff him because he verbally challenged their actions? The Report found the answer to this question to be yes, and this Court agrees.

Defendants argue that case law does not clearly establish that their use of force was not justified to temporarily detain a person to allow EMS personnel to render aid to another individual or to handcuff a person actively resisting arrest. As recognized by the Report, the Fourth Circuit Court of Appeals has held that the use of "disabling" force on a non-violent misdemeanant who posed no threat to an officer or anyone else was excessive, even where the suspect attempted to flee and resisted the officer's attempt to handcuff him. *See Rowland v. Perry,* 41 F.3d 167 (4th Cir. 1994). Defendants respond that Plaintiff did pose a threat, and as such, their use of force was justified.  However, this Court also found that genuine issues of material fact exist as to whether Plaintiff posed a threat to the deputies. The Fourth Circuit has held that where disputed factual issues exist a district court is precluded from granting a law enforcement officer qualified immunity on an excessive force claim at the summary judgment stage. *See Connor v. Thompson*, 647 F.App'x 231, 239 (4th Cir. 2026). The facts, as we must view them for the purposes of summary judgment, would be sufficient to support a trier of fact's finding that Defendants' actions when arresting Plaintiff amounted to excessive force. Moreover, reasonable deputies would also know that their use of force under the circumstances presented by Plaintiff's version of events would be unlawful. Therefore, this Court finds it is constrained to deny

Defendants qualified immunity at this juncture because genuine issues of material fact exist as to whether their conduct was constitutional and objectively reasonable.[4]

## IV.     CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto along with Plaintiff's reply, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. Accordingly, this Court adopts the Report and Recommendation in all regards. (ECF No. 40). Thus, Defendants' motion for summary judgment is granted as to Defendants Poindexter and Hawthorne but denied as to Defendants Glass and Morgan. Additionally, Defendant Williams is dismissed for lack of service pursuant to Federal Rule of Civil Procedure 4(m).

IT IS SO ORDERED.

February 8, 2023                                              Joseph F. Anderson, Jr.
Columbia, South Carolina                              United States District Judge

---

[4] The question of qualified immunity is one of law and not fact. Therefore, to the extent that a dispute of material fact precludes a conclusive ruling on qualified immunity at the summary judgment state, this Court should submit factual questions to the jury and reserve for itself the legal question of whether Defendants are entitled to qualified immunity on the facts found by the jury. *Willingham v. Crooke,* 412 F.3d 553, 560 (4th Cir. 2005).